IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Steven C. Lefemine, | ) | |
| d/b/a Columbia Christians for Life, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 8:08-3638-HMH |
| | ) | |
| vs. | ) | **OPINION & ORDER** |
| | ) | |
| Dan Wideman, individually and in his | ) | |
| official capacity; Mike Frederick, | ) | |
| individually and in his official capacity; | ) | |
| Lonnie Smith, individually and in his | ) | |
| official capacity; Brandon Strickland, | ) | |
| individually and in his official capacity; | ) | |
| and Tony Davis, Sheriff, in his official | ) | |
| capacity, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on remand from the United States Court of Appeals for the Fourth Circuit. On November 5, 2012, the United States Supreme Court in Lefemine v. Wideman, 133 S. Ct. 9 (2012), vacated the Fourth Circuit's judgment denying attorney's fees to Plaintiff and remanded the case for a determination of whether special circumstances exist that would render an award of attorney's fees to Lefemine, the prevailing party, unjust.[1] Lefemine, 133 S. Ct. at 11. On February 7, 2013, the Fourth Circuit remanded the matter to this court "to award attorney's fees unless it determines by express findings that special circumstances would render such an award unjust." Lefemine v. Wideman, No. 10-1905 (4th Cir. Feb. 7, 2013)

---

[1]Plaintiff petitioned for writ of certiorari solely on the issue of whether he was a prevailing party, and thus qualified for attorney's fees under 42 U.S.C. § 1988. Therefore, the remainder of the Fourth Circuit's decision affirming this court's judgment was unchallenged.

1

(unpublished) (internal quotation marks omitted).  For the reasons set forth below, the court

finds that special circumstances exist rendering an award of attorney's fees unjust.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff, Steven C. Lefemine ("Lefemine"), is the sole proprietor of Columbia Christians

for Life ("CCL"), an organization that protests abortion.  Lefemine v. Davis, 732 F. Supp. 2d

614, 617 (D.S.C. 2010).  On November 3, 2005, Lefemine and other CCL members conducted

an anti-abortion demonstration in Greenwood County, South Carolina, carrying graphic signs

that depicted aborted, dismembered fetuses.  Id.; (Defs. Mot. Summ. J. Ex. (Smith Dep. 58),

ECF No. 41-8.)  Specifically, the demonstration occurred at the intersection of U.S. Highway 25

North and the S.C. 72 Bypass, "which is the busiest intersection in Greenwood County."

Lefemine, 732 F. Supp. 2d at 617 (internal quotation marks omitted).

During the demonstration, Major Lonnie Smith ("Major Smith"), Lieutenant Randy

Miles ("Lt. Miles"), and Deputy Brandon Strickland ("Deputy Strickland") of the Greenwood

County Sheriff's Office reported to the scene after receiving complaints from motorists driving

through the intersection.  Id.  Specifically, Major Smith received reports that the signs were

extremely graphic in nature and that "one mother called saying that her son was in the back seat

screaming, crying because he had seen those signs."  Id. (internal quotation marks omitted).

Lt. Miles arrived at the scene first and informed Lefemine that "he had several complaints about

the graphic photographs and this was causing a disturbance in the traffic flow at the

intersection."  Id. at 618 (internal quotation marks omitted).  "When Major Smith arrived at the

intersection, he observed a number of individuals holding signs and megaphones."  Id.  Upon

arriving at the intersection, Major Smith contacted Chief Deputy Frederick ("Chief Deputy

Frederick") to inform him of the protest.[2]  <u>Lefemine</u>, 732 F. Supp. 2d at 618.  Chief Deputy Frederick advised Major Smith that if "th[e] signs are graphic and people in the community were complaining, then we were to tell them that they could continue to protest but they would either have to put away or take down the signs or . . . possibly be ticketed for breach of peace."  <u>Id.</u>

Following instructions, Major Smith approached Lefemine and the two engaged in the following conversation:

**Major Smith:**  How are you doing, sir?

**Lefemine:**  Alright, sir, how are you?

**Major Smith:**  Lonnie Smith with Greenwood County Sheriff's Office.

**Lefemine:**  Steve Lefemine.

**Major Smith:**  OK, we have a number of complaints from people that find this offensive and . . . they don't want this on the street.  So, at this time, I'm gonna ask you to put them up, OK?  Put these signs up, because you can't distinguish what age of people are seein' these signs.  OK, I'm asking you to put 'em up and go ahead, and if you want to stand here on the corner, that's fine, but we cannot have these signs up because people do consider this offensive material.  OK?

**Lefemine:**  Major Smith, if you're ordering us to leave under threat of arrest or being ticketed, we will leave, but I want you to know you're violating our constitutional right [Major Smith: OK] because you're discriminating based on content of our signs.

**Major Smith:**  Right, people do find this offensive, and this is an offensive manner, OK?  This is offensive because you've got small children–you've got different ones that are seeing this.  We have had so many complaints about people that this is offensive . . . .  You're free to stay here, whatever, but we can't have these types of signs up where people can see 'em.

---

[2]Chief Deputy Frederick is no longer employed by the Greenwood County Sheriff's Office.  <u>Lefemine v. Wideman</u>, 672 F.3d 292, 297 (4th Cir. 2012).

**Lefemine:** We will leave if you're ordering us to leave under threat of being ticke[te]d or being arrested . . . . Being offensive is not a basis for violating First Amendment rights . . . .

**Major Smith:** You do not have a right to be offensive to other people in that manner.

. . . .

**Major Smith:** [] I'm asking you if you will please take the signs downs. If you do not take the signs down we will have no other choice we're gonna ticket you for breach of peace.

**Lefemine:** [] These are not obscene signs.

. . . .

**Major Smith:** And I'm not saying you gotta leave the sidewalk. I'm not sayin' that. I'm just sayin' you got to put these signs down.

. . . .

**Mike Smith:** Like I said, this is the last warning. You can either go ahead and put 'em down or I'll ticket you.

**Lefemine** (to others in group): Go ahead and remove the signs, he's violating our constitutional rights. Go remove the signs . . . remove the signs.

Id. at 618-19. Following the conversation, Lefemine and the other CCL members removed their

signs and left the scene. Id. at 619.

On November 13, 2006, an attorney from the National Legal Foundation ("NLF") wrote

a letter to Greenwood County Sheriff Dan Wideman ("Sheriff Wideman"), informing him that

CCL intended to return to the Greenwood area in the near future to protest abortion. Id. The

letter cautioned Sheriff Wideman that "any further interference with CCL's message" would

cause Lefemine "to pursue all available legal remedies." Lefemine, 732 F. Supp. 2d at 619.

Chief Deputy Frederick responded, in part, that the officers' prior response was based on CCL's

4

methodology and not their content and warned that any further protests displaying graphic signs would force the police to "order the person(s) to stop or face criminal sanctions." Id. at 619. Subsequently, Plaintiff conducted two more demonstrations on the Greenwood city side of the same intersection, within Greenwood County, without incident.  Id. at 617, 619.

Lefemine filed a complaint against Sheriff Wideman, Chief Deputy Frederick, Major Smith, and Deputy Strickland on October 31, 2008, alleging violations of his First Amendment rights under 42 U.S.C. § 1983 and seeking monetary damages, a declaratory judgment, a permanent injunction, and attorney's fees.  Id. at 619-20.  On February 27, 2009, Lefemine filed an amended complaint adding Sheriff Tony Davis ("Sheriff Davis") as a defendant.  Id. at 619. The parties filed cross motions for summary judgment.  Lefemine, 732 F. Supp. 2d at 619.  This court held that the Defendants had infringed Lefemine's rights of free speech, peaceable assembly, and free exercise of religion.  Id. at 624-25.  However, the court found that the Defendants were entitled to qualified immunity because their actions did not violate clearly established constitutional rights of which a reasonable person would have known.  Id. at 626-27. Further, the court found that the Defendants were not liable in their official capacities because the Greenwood County Sheriff's Office did not have a policy or custom of violating a citizen's First Amendment rights.  Id. at 627.  Thus, the court awarded no monetary damages.  The court permanently enjoined the Defendants from "engaging in content-based restrictions on Plaintiff's display of graphic signs without narrowly tailoring its restriction to serve a compelling state interest."  Id.  The court denied Lefemine's request for attorney's fees, finding that "[u]nder the totality of the facts in this case the award of attorney's fees [was] not warranted."  Lefemine, 732 F. Supp. 2d at 627.

5

Lefemine appealed and on March 5, 2012, the Fourth Circuit affirmed and further held that Lefemine did not qualify for attorney's fees "in light of the lack of findings that Plaintiff was a prevailing party within the meaning of § 1988." Lefemine v. Wideman, 672 F.3d 292, 303 (4th Cir. 2012). Thereafter, "Lefemine sought a writ of certiorari to review the Fourth Circuit's determination that he was not a prevailing party under § 1988." Lefemine, 133 S. Ct. at 11. On November 5, 2012, the Supreme Court held that "[b]ecause the injunction ordered the defendant officials to change their behavior in a way that directly benefited the plaintiff, we vacate the Fourth Circuit's decision and remand for further proceedings." Id. at 10. Further, the Supreme Court stated that "[b]ecause Lefemine is a prevailing party, he should ordinarily recover any attorney's fee unless special circumstances would render such an award unjust." Id. at 11 (internal quotation marks omitted). Subsequently, the Fourth Circuit remanded the matter to this court for further proceedings consistent with the Supreme Court's opinion. Lefemine v. Wideman, No. 10-1905 (4th Cir. Feb. 7, 2013) (unpublished). On February 20, 2013, the court ordered the parties to file briefs on the issue of attorney's fees. (Feb. 20, 2013 Order 1, ECF No. 89.) The parties have filed briefs, and the matter is ripe for consideration.

## II. DISCUSSION OF THE LAW

"In any action or proceeding to enforce a provision of section[] . . . 1983, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ." 42 U.S.C. § 1988(b). "The purpose of § 1988 is to ensure effective access to the judicial process for persons with civil rights grievances. Accordingly, a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." Hensley v. Eckerhart, 461 U.S. 424, 429

6

(1983) (internal citations and quotation marks omitted).  "Only on rare occasions does a case present such circumstances . . . ."  Doe v. Bd. of Educ. of Baltimore Co., 165 F.3d 260, 264 (4th Cir. 1998).  Thus, "[t]he discretion of the district court in deciding whether to award attorney's fees to a prevailing party is narrowly limited."  Bonnes v. Long, 599 F.2d 1316, 1318 (4th Cir. 1979) (overruled on other grounds by S-1 & S-2 v. State Bd. of Educ., 21 F.3d 49, 51 (4th Cir. 1994).

The Supreme Court held that Lefemine was a prevailing party because the injunction ordered by this court instructed "the defendant officials to change their behavior in a way that directly benefited the plaintiff."  Lefemine, 133 S. Ct. at 10.  The Defendants argue that attorney's fees should not be awarded to the Plaintiff because "it was not unreasonable for the officers to have believed at the time that they could prohibit the graphic signs given the prevailing safety concerns."  (Defs. Mem. Opp'n Att'y Fees 5, ECF No. 91.)

"In determining whether special circumstances exist, a court may consider the totality of the circumstances so that even though each justification for the denial of fees may not, on its own, support a finding of special circumstances, the sum total of the justifications may warrant a denial of fees."  Morse v. Republican Party of Virginia, 972 F. Supp. 355, 359 (W.D. Va. 1997).  Here, the totality of the circumstances "amount to special circumstances that would make [a fee] award unjust."  Peter v. Jax, 187 F.3d 829, 837 (8th Cir. 1999).  The special circumstances present in this case are:  (1) the Defendants' qualified immunity, (2) the absence of a policy or custom of discrimination against abortion protesters by the Greenwood County Sheriff's Office, and (3) the limited nature of the injunctive relief.

## A.  Defendants' Qualified Immunity

First, as the court originally noted, the Defendants' actions were "not unreasonable under the circumstances." Lefemine, 732 F. Supp. 2d at 626.  The Defendants were granted qualified immunity in their individual capacities because their actions did not violate Plaintiff's clearly established constitutional rights.  Id. at 625.  The Defendants' actions taken in good faith in ordering the protesters to remove the graphic signs weigh in favor of finding special circumstances in this case.[3]

The Defendants' actions were precipitated by several complaints alleging that the flow of traffic had been affected and that at least one child had experienced extreme emotional distress after being exposed to the extraordinarily graphic signs.  Not only may the State act "to protect its substantial and legitimate interest in traffic safety," Lytle v. Doyle, 326 F.3d 463, 470 (4th Cir. 2003), the Supreme Court has repeatedly "recognized that there is a compelling interest in protecting the physical and psychological well-being of minors." Sable Commc'ns of Cal., Inc. v. F.C.C., 492 U.S. 115, 126 (1989).  In affirming this court's finding that the Defendants were entitled to qualified immunity, the Fourth Circuit held:

> Given th[e] state of the law [regarding First Amendment rights and how a State may act to regulate traffic safety and ensure the well-being of minors] in 2005, it was not objectively unreasonable for Defendants to believe they could allow Plaintiff to continue its protest, but nevertheless remove the graphic signs in

---

[3]In isolation, "a defendant's good faith is not a special circumstance that would render an award of fees unjust." Bill v. Hodges, 628 F.2d 844, 847 (4th Cir. 1980).  Nevertheless, although "good faith by itself is not a special circumstance justifying a denial of attorney's fees[,]" "a defendant's good faith is one factor of several that a court may consider in applying [§ 1988]." Teitelbaum v. Sorenson, 648 F.2d 1248, 1250 (9th Cir. 1981); see also Chastang v. Flynn & Emrich Co., 541 F.2d 1040, 1045 (4th Cir. 1976) (basing the decision not to award attorney's fees to the prevailing plaintiff in part on the defendant's "good faith").

order to protect the public from potential traffic hazards based on the signs'
proximity to the road and to prevent children from seeing the images.

Lefemine, 672 F.3d at 300-01 (vacated in part on other grounds by Lefemine, 133 S. Ct. 9).

Further, Major Smith refrained from engaging the protesters until consulting with Chief Deputy

Frederick about the appropriate course of action. Following the instructions of his superior,

Major Smith approached Lefemine and respectfully requested that he and the other CCL

members put down their signs. Major Smith was never coercive in tone and handled the matter

professionally throughout, even when confronted by Plaintiff's initial objection. Neither party

argues that any hostility arose, and Lefemine and the other CCL members ultimately

disassembled peacefully.

Further, the Defendants never ordered the Plaintiff to leave the premises. Instead, the

protesters were only asked not to display the graphic signs. Lefemine and the other CCL

members could still orally share their message and utilize non-graphic signs. It was never the

Defendants' intent to infringe upon the Plaintiff's First Amendment rights, which is exemplified

by the fact that the Defendants repeatedly informed Plaintiff that he and the other CCL members

could continue to protest at their exact location. Lefemine, 732 F. Supp. 2d at 618. Confronted

with a "litany of complaints" and mounting traffic flow issues exacerbated by the protesters'

close proximity to ongoing motorists (six inches from the roadway), the Defendants were

attempting to diffuse an unsafe situation that was quickly escalating. (Defs. Mot. Summ. J. Ex.

(Frederick Dep. 19, 21), ECF No. 41-6.) Thus, since "it was not clearly established that law

enforcement officers could not proscribe the display of large, graphic photographs in a

traditional public forum" at the time of the protests, the Defendants' actions taken in good faith

weigh in favor of finding special circumstances.  Lefemine, 627 F.3d at 299 (vacated in part on other grounds by Lefemine, 133 S. Ct. 9).

### B. Absence of a Policy or Custom of Discrimination

Second, it was not "the policy or custom of the [Greenwood County] Sheriff's Office to violate a citizen's First Amendment rights," which additionally supports a finding of special circumstances.  Lefemine, 732 F. Supp. 2d at 627.  "Chief Deputy Frederick's instructions were strictly based on what he heard from Major Smith and Lieutenant Miles, and the [Plaintiff's] message was an afterthought.  The content [of the signs] was an afterthought."  Lefemine, 672 F.3d at 301 (internal quotation marks omitted).  The Supreme Court has regularly held that "[i]t is a traditional exercise of the States' 'police powers to protect the health and safety of their citizens.'"  Hill v. Colorado, 530 U.S. 703, 715 (2000) (quoting Medtronic, Inc. v. Lohr, 518 U.S. 470, 475 (1996)).  Chief Deputy Frederick "maintained that he based his decision on his belief that the significant interest in the safety of these motorists who happened by the protest clearly outweighed the very minor burden to Columbia Christian for Life's free speech rights when we ordered them to stop presenting the incredibly graphic signs to the roadway."  Lefemine, 672 F.3d at 301.  In particular, he ordered the removal of the signs based on "the combination of [the signs'] graphic nature and their proximity to the roadway, and [directly] referred to [the protesters'] right to stand six inches from the roadway and conduct themselves as they were."  Id. (internal citations and quotation marks omitted).

Moreover, "the protection afforded to offensive messages does not always embrace offensive speech that is so intrusive that the unwilling audience cannot avoid it."  Hill, 530 U.S. at 716 (citing Frisby v. Schultz, 487 U.S. 474, 487 (1988)).  "[T]he Supreme Court has

'regularly rejected the assertion that people who wish to propagandize protests or views have a constitutional right to do so whenever and however and wherever they please.'" Lefemine, 672 F.3d at 300 (quoting United States v. Grace, 461 U.S. 171, 177-78 (1983)). Chief Deputy Frederick premised the decision on what he learned in "various constitutional law classes that [he] had [taken at the] [] FBI Academy and [additional] in-service type training." (Defs. Mot. Summ. J. Ex. (Frederick Dep. 26), ECF No. 41-6.) He did not intend to condemn Plaintiff's message or its content. Rather, his singular focus was on the safety of motorists, in general, and the well-being of minors unable to avoid observing the graphic images.[4] See Hill, 530 U.S. at 718 (noting that the Supreme Court's cases "have repeatedly recognized the interests of unwilling listeners in situations where the degree of captivity makes it impractical for the unwilling viewer or auditor to avoid exposure") (internal quotation marks omitted). This conclusion is bolstered by the fact "that Lefemine protested at the same location on two later occasions without incident."[5] (Defs. Mem. Supp. Summ. J. 5, ECF No. 41-1.) Thus, the

_____

[4]One motorist complained that her son, who was sitting in the backseat, began screaming and crying after observing the graphic signs. The protesters were only six inches from the roadway, and, thus, it was almost impossible for minors to avoid exposure to the signs when proceeding through the intersection.

[5]Although Plaintiff claims to have demonstrated "on the Greenwood city side of U.S. 25/S.C. 72 Bypass for fear of criminal sanctions from Greenwood County," Lefemine, 732 F. Supp. 2d at 619, it was the same intersection and it appears to the court that both sides of the intersection are located in Greenwood County and within the jurisdiction of the Sheriff's Office. (Defs. Mem. Supp. Summ. J. 5, ECF No. 41-1; Pl. Mem. Supp. Summ. J. 12, ECF No. 42.) Thus, this further demonstrates that in approaching the Plaintiff, Defendants were only responding to complaints out of concern for traffic safety and the well-being of minors. The Defendants did not have any discriminatory animus toward Plaintiff's cause and were acting out of concern for the safety of the citizens of Greenwood County.

absence of a policy or custom of discrimination by the Greenwood County Sheriff's Office

against abortion protesters weighs in favor of finding special circumstances.

### C.  Limited Nature of Injunctive Relief

Finally, although Plaintiff was afforded injunctive relief making it a prevailing party,[6] the

injunctive relief granted to Plaintiff was extremely limited.  The court merely enjoined the

Defendants from engaging in similar "content-based restrictions on Plaintiff's display of graphic

signs without narrowly tailoring its restriction to serve a compelling state interest."  Lefemine,

732 F. Supp. 2d at 627.  Such a circumscribed proscription condemned the Defendants' actions

in this specific instance.  While the Plaintiff was technically a prevailing party, the impact of the

injunction is very limited, particularly in light of the fact that the Plaintiff was able to conduct

two other protests without incident.  Thus, Plaintiff's ability to convey his message was not

significantly impacted by the Defendants' conduct.

Further, the narrow relief afforded Plaintiff is minimal when compared to the "extent of

relief" sought.  Mercer v. Duke University, 401 F.3d 199, 204 (4th Cir. 2005) ("The first factor

. . . of primary importance in all cases where a court is asked to award fees to the prevailing

---

[6]If not for receiving injunctive relief, Plaintiff would not be considered a prevailing party given the Defendants' success on its qualified immunity defense and the court's finding that the Sheriff's Office did not have a policy or custom of violating First Amendment rights.  See Kentucky v. Graham, 473 U.S. 159, 163, 165, 166 (The Supreme Court, in "unravel[ing] . . . the distinctions between personal- and official-capacity suits," discusses in detail how immunity affects prevailing party status in a personal-capacity suit and what a plaintiff must prove to prevail in an official-capacity suit.  The Court stated that a defendant entitled to qualified immunity in a personal-capacity suit "has not been prevailed against."  Further, the Court stated that "in an official-capacity action . . . a governmental entity is liable under § 1983 only when the entity itself is a moving force behind the deprivation; thus, in an official-capacity suit the entity's policy or custom must have played a part in the violation of federal law.") (internal citations and quotation marks omitted).

party [is] the extent of the relief obtained.").  Plaintiff requested an award of "compensatory and/or nominal damages," in addition to injunctive relief proscribing Defendants from prohibiting CCL's "use of signs of aborted babies" in Greenwood County.  (Am. Compl. 11, ECF No. 5.)  Such relief was not granted.  "Put simply, [this] court ordered Defendants to comply with the law and safeguard Plaintiff's constitutional rights in the future.  No other damages were awarded."  Lefemine, 672 F.3d at 303 (vacated in part on other grounds by Lefemine, 133 S. Ct. 9).  The court carefully limited the injunctive relief and never declared that it was outrightly unconstitutional to limit the use of graphic signs of aborted babies as Plaintiff requested.  Therefore, based on the facts of this case, the limited nature of relief granted to Plaintiff and Plaintiff's continued ability to convey his message support a finding of special circumstances.  Based on the foregoing, the court finds that under the totality of the circumstances, the special circumstances in this case make an award of attorney's fees to the prevailing party unjust.

It is therefore

**ORDERED** that the special circumstances in this case render an award of attorney's fees to the Plaintiff unjust.

**IT IS SO ORDERED.**

s/Henry M. Herlong, Jr.
Senior United States District Judge

Greenville, South Carolina
April 9, 2013